UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CARLOS RAMON ZAPATA,<br><br>　　　　Petitioner,<br><br>v.<br><br>MATTHEW DIVRIS,<br><br>　　　　Respondent. | )<br>)<br>)<br>)<br>)<br>) Civil No. 4:23-cv-40068-MRG<br>)<br>)<br>)<br>)<br>) |

**ORDER ON PETITION**
**FOR THE WRIT OF HABEAS CORPUS**

**GUZMAN, J.**

　　Before the Court is pro se Petitioner Carlos Ramon Zapata's ("Zapata") Petition for Writ of Habeas Corpus, [ECF No. 1]. In this petition, Zapata challenges his 2020 conviction, alleging that the Commonwealth of Massachusetts ("Commonwealth") violated his Sixth Amendment rights to an impartial jury and to the effective assistance of counsel. Matthew Divris ("Divris") is the Superintendent at North Central Correctional Institution ("NCCI") where Zapata is incarcerated.[1] Zapata asks this Court to vacate his sentence and dismiss the charges against him. For the following reasons, the petition is DENIED.

---

[1] The Court notes that Divris never filed an actual motion to dismiss; however, the Court will construe his memorandum in opposition, [ECF No. 28], as a motion to dismiss.

1

I. **BACKGROUND**

   A. **The Underlying Offense**

The following facts were proved at trial. On September 4, 1999,[2] Zapata broke into the apartment of his former girlfriend, Anna, with whom Zapata also had a then-about two-year-old daughter. [ECF No. 19-3 at 58-59[3]]. Zapata entered the apartment, went to Anna's bedroom, and stabbed Anna's then-partner, who was asleep in the bed with Anna. [Id. at 69]. Zapata then put a knife to Anna's neck and raped her. [Id. at 69-70]. Anna was conscious and described the incident to police, and DNA testing after the incident matched Zapata's profile. [ECF No. 19-4 at 44-45]. After the incident, police attempted to locate Zapata, but did not find him. [Id. at 40]. A criminal complaint was filed, and a warrant for Zapata's arrest issued shortly after September 4, 1999. [ECF No. 19-2 at 10].

After she broke up with Zapata around January 1999, Anna had obtained an order requiring him to pay child support for their daughter. [ECF No. 19-3 at 78-79]. After the incident on September 4, 1999, Anna did not receive any child support payments for approximately five to six years. [Id.] However, child support payments from Zapata resumed after that period. [See id. at 69, 74, 78]. Anna did not receive the child support checks from Zapata directly but received them instead from the Massachusetts Department of Revenue, from which she learned Zapata was living in Virginia. [Id. at 74-76]. Anna did have some contact with Zapata from September 1999 to 2018, but did not notify authorities, who were still seeking to arrest Zapata on the 1999 warrant. [Id. at 131-32].

---

[2] The incident underlying Zapata's conviction occurred on September 4, 1999; however, Zapata was not apprehended until 2018, and did not begin his trial until March 2020.

[3] All pincites refer to ECF pagination.

On August 26, 2018, Zapata was arrested in Boston for an unrelated alleged domestic violence incident against his sister. [ECF No. 19-7 at 10]. The outstanding arrest warrant from the September 1999 incident appeared at that time, and Zapata was arrested on those charges, specifically "an assault and battery by means of a dangerous weapon, assault and battery, and two counts of assault with intent to rape." [Id.]

### B. Massachusetts State-Court Proceedings

Zapata was arraigned in Essex County Superior Court on October 16, 2018. The charges included one count of armed burglary, one count of aggravated rape, one count of armed assault with intent to murder, two counts of assault and battery with a dangerous weapon, and one count of kidnapping. [ECF No. 19-1 at 5-6]; Commonwealth v. Zapata, No. 1877CR00618, 2019 Mass. Super. LEXIS 1252, at *1, *3 (Mass. Sup. Ct. Aug. 21, 2019). Zapata's trial was initially scheduled to commence on October 28, 2019. [ECF No. 19-1 at 6]. The trial was continued several times and eventually began on March 9, 2020. [Id.] On March 9, 2020, Zapata's privately retained counsel, William Keefe ("Attorney Keefe"), verbally requested a continuance of the trial because Zapata had retained a new attorney, Artemisa Monteiro ("Attorney Monteiro"), the day before. [Id. at 99]. Associate Justice Thomas Drechsler of the Essex County Superior Court denied the continuance but allowed Attorney Monteiro to appear as additional counsel alongside Attorney Keefe. [Id. at 101, 110].

Zapata's trial was ongoing when, on March 10, 2020, Massachusetts Governor Charlie Baker declared a state of emergency in response to the COVID-19 pandemic. [Id. at 790]. Jury deliberations in Zapata's case began on March 12, 2020. [Id. at 678]. On March 13, 2020, the second day of jury deliberations, the state courthouse operated at limited capacity due to a staff member's exposure to COVID-19. [Id. at 710-711]. Attorney Keefe raised concerns that the jury would not be able to properly deliberate if they suspected an issue, given the court's relative

emptiness. [Id. at 708]. Attorney Keefe's concern was that the jury, seeing the emptiness of the courthouse, would become paranoid that "something [was] up" and rush their deliberations so they could be released as quickly as possible. [ECF No. 19-6 at 12]. While the jury was absent from the courtroom, Judge Drechsler informed the parties that a member of the court's staff had been exposed to COVID-19. Judge Drechsler assured the parties that the building had been disinfected and precautions had been taken to prevent jurors from noticing that anything was amiss when they arrived that morning. [Id. at 711-12]. Zapata moved for a mistrial, reasserting concerns with the jury's ability to deliberate fairly due to the courthouse's vacant appearance. [Id. at 717]. The trial court initially denied the motion, but after learning about a recent local news article regarding COVID-19 exposure at the courthouse, Judge Drechsler agreed to discuss the issue with the jury. [Id. at 717-22]. Judge Drechsler then informed the jury of the employee's COVID-19 exposure and subsequent courthouse cleaning efforts. [Id. at 732-733]. The jury did not indicate that the circumstances would interfere with their ability to deliberate fairly and thoroughly, and the court instructed them to continue their deliberations. [Id. at 733]. Later that day, a jury note indicated that the jury was deadlocked. With the parties' consent, Judge Drechsler instructed the jurors according to Tuey-Rodriguez,[4] and the jury resumed deliberation.

On the afternoon of March 13, 2020, the jury returned its verdict. [Id. at 740]. The jury found Zapata not guilty of the charges of armed burglary and armed assault with intent to murder, and found him guilty of the charges of aggravated rape, two counts of assault and battery by means of a dangerous weapon, and kidnapping. [Id. at 742-45]. On November 4, 2020, Judge Drechsler sentenced Zapata to a state prison for a minimum of fifteen years and a maximum of twenty years for the aggravated rape conviction, a minimum of nine years and a maximum of ten years for the

---

[4] See Commonwealth v. Rodriguez, 300 N.E.2d 192, 202-03(Mass. 1973); Commonwealth v. Tuey, 62 Mass. 1, 2-3 (Mass. 1851) (providing Massachusetts jury instructions that urge the jury to come to a unanimous verdict when the jury indicates it is at an impasse).

kidnapping conviction to run concurrent to the aggravated rape sentence, and three years of probation for the assault and battery by means of a dangerous weapon convictions to run consecutively to the rape and kidnapping sentences. [Id. at 779-81].

On November 9, 2020, Zapata filed an appeal of his sentence. [Id. at 14]. On appeal to the Massachusetts Appeals Court ("MAC"), Zapata raised the following grounds for appeal: (1) the trial judge erred in denying Zapata's motion for a mistrial due to the influence of the COVID-19 pandemic on the jury's deliberations, thereby impairing his rights to an impartial jury under the Sixth Amendment; and (2) ineffective assistance of trial counsel, in that Attorney Keefe: (A) failed to file a written motion for continuance and/or withdrawal supported by an affidavit; (B) failed to present evidence to rebut the Commonwealth's characterization of Zapata's move to Virginia as consciousness of guilt; and (C) failed to object to the jury verdict for irregularity. [Id. at 19-20]. The MAC affirmed Zapata's convictions on October 5, 2022, finding that the trial judge permissibly denied the mistrial motion and that trial counsel was not ineffective for any of the three purported reasons. [Id. at 17]; Commonwealth v. Zapata, No. 21-P-692, 2022 Mass. App. Unpub. LEXIS 618, at *1 (Mass. App. Ct. Oct. 5, 2022).

On April 4, 2023, Zapata applied for Further Appellate Review ("FAR") by the Massachusetts Supreme Judicial Court ("SJC"), raising the same arguments as his lower court appeal. [ECF No. 19-1 at 17]. The SJC denied FAR without issuing an opinion on May 12, 2023.[5]

---

[5] Where, as here, a state's highest appellate court denies an application for further review without comment, the federal court should "look through" that judgment to identify, and conduct Section 2254 review upon the last reasoned state court decision. Ylst v. Nunnemaker, 501 U.S. 797, 805 (1991). Here, the last reasoned state court decision is the 2022 MAC decision. Zapata, 2022 Mass. App. Unpub. LEXIS 618. Accordingly, that decision is the focus of the Court's review. Janosky v. St. Amand, 594 F.3d 39, 47 (1st Cir. 2010) ("Because the SJC summarily denied further appellate review, we look to the last reasoned state-court decision—in this case, the MAC's rescript.").

Commonwealth v. Zapata, 210 N.E. 3d 352 (2023) (Table). Zapata then filed the instant habeas petition in this Court on June 13, 2023, raising the same three grounds as before the MAC and SJC. [ECF No. 1 at 6, 8].

## II. LEGAL STANDARDS

### A. The Antiterrorism and Effective Death Penalty Act Standard ("AEDPA")

Since April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") controls habeas review. This Act commands district courts to deny a habeas petition unless the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on . . . unreasonable [factual] determination[s]." 28 U.S.C. § 2254(d)(1)-(2). For a state court decision to be contrary to federal law, "it either applies a test that is inconsistent with one announced by the [Supreme] Court or reaches the opposite conclusion on materially indistinguishable facts." Rashad v. Walsh, 300 F.3d 27, 34-35 (1st Cir. 2002). Meanwhile, a decision is unreasonable where "the state court identifi[ed] the correct governing legal principle . . . but unreasonably applie[d] that principle" when viewed objectively. Williams v. Taylor, 529 U.S. 362, 365 (2000). Mere error by the state court is not enough to sustain a petition. McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002). The state court decision must have "some increment of incorrectness beyond error" that is "great enough to make the decision unreasonable in the independent and objective judgment of the federal court" that is reviewing the habeas petition. Id. (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2nd Cir. 2000)); see also Harrington v. Richter, 562 U.S. 86, 103 (2011) (the state court's decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement"). Indeed, "[t]he standard for evaluating the state court's decision is 'highly deferential,' with 'the presumption that state courts know and follow the law' and the requirement that the decisions of the state court 'be given the benefit of the doubt.'" Simpson v.

6

Spencer, 372 F. Supp. 2d 140, 145 (D. Mass. 2005) (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

In the same vein, factual determinations by the state court are presumed to be correct. 28 U.S.C. § 2254(e)(1). The burden is on the petitioner to rebut the presumption of correctness by clear and convincing evidence. Id.; see Teti v. Bender, 507 F.3d 50, 58 (1st Cir. 2007). If the petitioner cannot clear this hurdle, then the state fact findings must be given credit by the habeas court. Rashad, 300 F.3d at 35.

**B. The Right to an Impartial Jury**

The first step for this Court is to determine what "clearly established Federal law" is at issue. See 28 U.S.C. § 2254(d). Zapata alleges that his Sixth Amendment right to an impartial jury was violated, as applied against the states under the Fourteenth Amendment's selective incorporation doctrine. See Parker v. Gladden, 385 U.S. 363, 364 (1966) (incorporating the Sixth Amendment impartial jury right). "An impartial jury is 'one capable and willing to decide the case solely on the evidence before it.'" Sampson v. United States, 724 F.3d 150, 163 (1st Cir. 2013) (quoting McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 554 (1984)). Moreover, the jury's verdict must be "free from external causes tending to disturb the exercise of deliberate and unbiassed [sic] judgment." Bebo v. Medeiros, 906 F.3d 129, 135 (1st Cir. 2018) (quoting Mattox v. United States, 146 U.S. 140, 149 (1892)). With respect to the grant or denial of a mistrial, "there is 'broad discretion reserved to the trial judge' to decide 'the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial.'" Hardy v. Maloney, 909 F.3d 494, 505 (1st Cir. 2018) (quoting Illinois v. Somerville, 410 U.S. 458, 462 (1973)).

C. **The Right to Effective Assistance of Counsel**

Zapata additionally alleges that his Sixth Amendment right to the assistance of counsel was violated, as incorporated against the states under the Fourteenth Amendment. See Gideon v. Wainwright, 372 U.S. 335, 343 (1963) (incorporating the Sixth Amendment right to the assistance of counsel). The Supreme Court's framework from Strickland v. Washington, 466 U.S. 668 (1984), controls the analysis of clearly established federal law. See Miller v. United States, 77 F.4th 1, 5-6 (1st Cir. 2023) (reviewing the denial of a habeas petition for ineffective assistance of counsel under Strickland). Strickland requires a petitioner alleging ineffective assistance of counsel to establish that (1) "counsel's performance was deficient" such that "counsel's representation fell below an objective standard of reasonableness," and (2) "deficient performance prejudiced the defense" meaning that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687-88, 694. "Review of counsel's performance must be deferential, and reasonableness must be considered in light of 'prevailing professional norms.'" Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010) (quoting Strickland, 466 U.S. at 688). The First Circuit has noted that Massachusetts' standard from Commonwealth v. Saferian, 315 N.E.2d 878, 883 (Mass. 1974), is the "functional equivalent of the Strickland standard."[6] Lynch v. Ficco, 438 F.3d 35, 48 (1st Cir. 2006).

Given how deferential the Strickland standard is, the Supreme Court has noted that "[s]urmounting Strickland's high bar is never an easy task." Harrington, 562 U.S. at 105 (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)). Further, "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Id.

---

[6] The Saferian standard is "whether there has been serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer -- and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." Saferian, 315 N.E.2d at 883.

8

### III.   DISCUSSION

#### A.   The Impartial Jury Claim

As stated above, when evaluating whether a defendant's Sixth Amendment right to an impartial jury was violated, courts look to whether the jury's verdict was "free from external causes tending to disturb the exercise of deliberate and unbiassed [sic] judgment." Bebo, 906 F.3d at 135 (quoting Mattox v. United States, 146 U.S. 140, 149 (1892)). In this case, the MAC noted that "the [trial] judge reassured the jurors about the safety measures implemented in the building and advised them to take as much time as they needed and to notify him if they had any concerns about their ability to deliberate fairly. We presume that the jury followed this instruction. . . ." Zapata, 2022 Mass. App. Unpub. LEXIS 618, at *4. The MAC's comments indicate a finding that Zapata's jury was "one capable and willing to decide the case solely on the evidence before it." See Sampson, 724 F.3d at 163 (quoting McDonough, 464 U.S. at 554). Thus, the jury's verdict was adequately "free from external causes" which would infringe on Zapata's impartial jury right. See Bebo, 906 F.3d at 135. Moreover, the MAC asserted that "the length of the deliberations belies [Zapata's] assertion that the jury were pressured into returning a verdict." Zapata, 2022 Mass. App. Unpub. LEXIS 618 at *4. Given the highly deferential standard of review afforded to trial court decisions with respect to mistrial decisions, Zapata's claims are inadequate to successfully assert that his Sixth Amendment right to an impartial jury was violated. See Hardy, 909 F.3d at 505. The MAC reasonably and correctly concluded that the trial judge acted permissibly within his "broad discretion" when finding that the jury was not biased and denying Zapata's motion for a mistrial. See id.

#### B.   The Effective Assistance of Counsel Claim

Zapata raises three ineffective assistance of counsel claims: that Attorney Keefe (1) failed to file a written motion for continuance and/or withdrawal supported by an affidavit; (2) failed to

9

present evidence to rebut the Commonwealth's characterization of Zapata's move to Virginia as consciousness of guilt; and (3) failed to object to the jury verdict for irregularity. [ECF No. 19-1 at 19-20]. As noted above, the First Circuit has held the standard in Saferian to be the "functional equivalent" of Strickland under Massachusetts state law for ineffective assistance of counsel claims. Lynch, 438 F.3d at 48; Saferian, 315 N.E.2d 878. As the MAC relied on Saferian in Zapata's case, it used the proper federal law. The question now turns to whether the MAC unreasonably applied the Strickland factors to Zapata's case, or if the state court came to an unreasonable factual determination.

### 1. *Motion for a Continuance and Motion to Withdraw*

First, Zapata alleges that Attorney Keefe was ineffective for failing to file a written motion for continuance and/or withdrawal supported by an affidavit. [ECF No. 19-1 at 19]. In order to prevail on this claim, Zapata must show that these actions fell below an "objective standard of reasonableness" and resulted in prejudice. Strickland, 466 U.S. at 687-88, 694. Importantly, the MAC decision points out the trial judge's assertion that he "wouldn't have granted a continuance . . . under the extraordinary circumstances of this case" and that "the judge's decision was not based on the lack of written motions." Zapata, 2022 Mass. App. Unpub. LEXIS 618 at *6. Given the judge's lack of reliance on the format of the motions, Zapata fails to show how Attorney Keefe's failure to file written motions for a continuance and/or withdrawal prejudiced Zapata. Moreover, the record indicates that Attorney Keefe learned about Zapata's new counsel the day before the start of trial. [ECF No. 19-1 at 99]. Therefore, it was not "objectively unreasonable" for Attorney Keefe to move orally for a continuance, as opposed to filing written motions, given the time constraint he was under. Furthermore, in light of the "strong presumption" that counsel's performance was satisfactory, the MAC's conclusion was not contrary to clearly established federal law. See Tevlin, 621 F.3d at 66 (quoting Strickland, 466 U.S. at 689).

### 2. *Rebuttal of Consciousness of Guilt Evidence*

Second, Zapata alleges that his counsel was ineffective for failing to present evidence to rebut the Commonwealth's characterization of Zapata's move to Virginia as consciousness of guilt. [ECF No. 19-1 at 19]. The MAC notes that "the evidence that [Zapata] says should have been presented—that he owned property in Maryland, sent child support payments to the Department of Revenue with a Virginia address, and appeared in a paternity action in Salem Probate and Family Court—was already before the jury." Zapata, 2022 Mass. App. Unpub. LEXIS 618, at *6-7.

"Cumulative evidence generally 'offer[s] an insignificant benefit, if any at all' for the purposes of a Strickland claim." Ayala v. Alves, 85 F.4th 36, 60 (1st Cir. 2023) (quoting Wong v. Belmontes, 558 U.S. 15, 23 (2009)). Thus, it was not objectively unreasonable for counsel to decline to present the pieces of evidence Zapata requested as those facts were already before the jury. Moreover, given the "insignificant benefit" offered by the presentation of cumulative evidence, Zapata fails to show that counsel's representation would have resulted in a different outcome at trial. See id. Therefore, the MAC's conclusion was not contrary to clearly established federal law.

### 3. *Inconsistent Verdicts*

Third, Zapata alleges that his counsel was ineffective for failing to object to the jury verdict for irregularity. [ECF No. 19-1 at 20]. Specifically, he asserts that it was inconsistent for the jury to convict him of aggravated rape and assault and battery with a dangerous weapon yet acquit him of armed burglary, since the rape and assault and battery charges were underlying felonies that would have supported the elements of armed burglary. [Id. at 38]. However, the Supreme Court has held that "a jury has "*unreviewable power* . . . to return a verdict of not guilty. . ."" United States v. McBride, 962 F.3d 25, 34 n.5 (1st Cir. 2020) (quoting Harris v. Rivera, 454 U.S. 339, 346

11

(1981)) (emphasis added). Additionally, "where there is a view of the case that makes the jury's answers. . . consistent, they must be resolved that way." ITyX Sols. AG v. Kodak Alaris, Inc., 952 F.3d 1, 11 (1st Cir. 2020) (citing Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364 (1962)).

The MAC found that the jury's verdicts were consistent because it is possible that other elements of armed burglary were not satisfied, leading to the acquittal. Zapata, 2022 Mass. App. Unpub. LEXIS 618 at *7. In so ruling, the MAC correctly followed federal law, which mandates treating jury verdicts as consistent wherever possible. See ITyX Sols. AG, 952 F.3d at 11. Furthermore, Zapata's trial counsel acted reasonably by not objecting to the jury verdicts because, as the MAC found, the verdicts were consistent. Also, given the judiciary's hesitation to review a jury's verdict, it is unlikely that the outcome of Zapata's case would have been different had his trial counsel objected to the verdicts. See McBride, 962 F.3d at 34 n.5. Accordingly, the MAC's conclusion here was both reasonable and not contrary to clearly established federal law.

## IV.    CONCLUSION

For each of Zapata's grounds for appeal, the MAC reasonably and correctly applied federal law and drew appropriate factual conclusions. See 28 U.S.C. § 2254(d). Moreover, Zapata has failed to put forth clear and convincing evidence to rebut the presumption of correctness that attaches to the factual conclusions of the state courts. See id. § 2254 (e)(1); Teti, 507 F.3d at 58. As a result, Zapata's Petition for Writ of Habeas Corpus, [ECF No. 1], is DENIED.

## V.    CERTIFICATE OF APPEALABILITY

The statute governing appeals of final orders in habeas corpus proceedings provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "To make a 'substantial showing,' a petitioner must demonstrate that 'reasonable jurists could debate whether . . . the

petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" Muller v. Goguen, 385 F. Supp. 3d 121, 130 (D. Mass. 2019) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotation marks omitted)). "To meet the debatable-among-jurists-of-reason standard, the petitioner must prove 'something more than the absence of frivolity or the existence of mere good faith.'" United States v. Cintron, 281 F. Supp. 3d 241, 242 (D. Mass. 2017) (quoting Miller-El v. Cockrell, 537 U.S. 322, 338 (2003)). In ruling on an application for a COA, a district court must indicate which specific issues satisfy the "substantial showing" standard. 28 U.S.C. § 2253(c)(3).

As stated above, Zapata has not made a substantial showing that he was denied a constitutional right. Therefore, the Court declines to issue a COA.

**SO ORDERED.**

Dated: July 30, 2024

                                              /s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge